UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| UNITED STATES OF AMERICA | * | CRIMINAL NO.: 09-00250-01 |
|---|---|---|
| VERSUS | * | JUDGE DONALD E. WALTER |
| DANIEL EARL DANFORTH | * | MAGISTRATE JUDGE HORNSBY |

## UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR A BILL OF PARTICULARS

NOW INTO COURT, through the undersigned Assistant United States Attorney and Trial Attorney, Criminal Section, Civil Rights Division, Department of Justice (collectively, "the United States"), comes the United States of America and respectfully submits its response in opposition to defendant Daniel Earl Danforth's motion for a bill of particulars (Doc. 20).  The Court should deny defendant's motion for a bill of particulars.

I.     **FACTUAL BACKGROUND**

A.     **Summary of the Charges**

On September 25, 2009, a federal grand jury sitting in Shreveport, Louisiana, returned a four-count indictment against the defendant, charging him with one count of conspiracy against rights, in violation of 18 U.S.C. § 241 (Count One); one count of criminal interference with the right to fair housing, in violation of 42 U.S.C. § 3631 and 18 U.S.C. § 2 (Count Two); one count of use of fire in the commission of a federal felony, in violation of 18 U.S.C. §§ 844(h) and 2 (Count Three); and one count of destruction or concealment of a tangible object, in violation of 18 U.S.C. § 1519 (Count Four).  Count Three of the

indictment is premised upon the felonies charged in Counts One and Two.

These charges arise out of the cross-burning that the defendant, while aiding and abetting and conspiring with others, carried out near the homes of his paternal grandparents and his cousin, who was living with her African American boyfriend[1] and eleven-year-old son,[2] and the defendant's subsequent obstructive conduct.  The defendant and his co-conspirators burned the cross because of race and because the victims were occupying dwellings.  Specifically, the defendant was angered by the interracial nature of the relationship between his cousin and her African American boyfriend, the fact that his cousin's African American boyfriend was living with her, and the Defendant's grandparents' perceived acquiescence to the relationship.  When the defendant learned that the Federal Bureau of Investigation ("FBI") was investigating the cross-burning, he obstructed justice by destroying and/or concealing the burned cross so that it would be unavailable as evidence.

**B.    Relevant Factual Background**

In October, 2008, the defendant's paternal grandparents lived with an adult granddaughter in a house on Danforth Road in Athens, Louisiana.  The defendant's cousin and her African American boyfriend and eleven-year-old son lived in the house immediately

---

[1]    The defendant's cousin and her African American boyfriend were married on November 22, 2008.  For the sake of clarity, he will be referred to herein as the cousin's boyfriend, as that was his status at the time these crimes were committed.

[2]    The defendant's cousin's son is the child of another union.  The defendant and all other individuals mentioned in this memorandum are white, except for the defendant's cousin's boyfriend, who, as noted, is African American.

next door to the paternal grandparents' home.[3]

In or around the middle of October, 2008, the defendant's father visited the defendant's paternal grandparents.  During this visit, the defendant and his father expressed displeasure with the fact that the cousin's African American boyfriend was living with the cousin at the house next door.  In large part, as a result of the presence of the cousin's African American boyfriend, the defendant's father argued with the grandparents and abruptly ended his visit.  The defendant then decided to burn a cross at his grandparent's house because of the presence of his cousin's African American boyfriend and because the grandparents were allowing him to live in the house next door.

Between on or about October 23 and 26, 2008, the defendant invited several individuals to help him build and burn a cross at his paternal grandparent's house.  The defendant told these individuals that his father had argued with the defendant's grandparents about the fact that the defendant's cousin was living with an African American man; that the defendant was mad at his grandparents for allowing his cousin to "mix races"; that the defendant did not think that his grandfather approved of the inter-racial nature of the relationship between the defendant's cousin and her African American boyfriend; that the defendant wanted to "do something" about the African American man living with his cousin; and that the defendant wanted to "run a 'nigger' off" from his grandparents' house.

---

[3]     This house was originally owned by the defendant's great-grandmother, but the defendant's paternal grandparents deeded the house to his cousin in 2005 when the great-grandmother passed away.

The defendant and/or his co-conspirator(s) then built a cross out of two small pine trees, using wire and a large nail to hold the pine trees in the shape of a cross. The defendant and/or his co-conspirator(s) drove the cross to the woods behind the grandparents' house and carried the cross through the woods. When the defendant and/or his co-conspirator(s) walked out of the woods into a clearing behind the grandparents' house, the defendant and/or his co-conspirator(s) covered the cross with oil or another ignitable liquid and lit the cross on fire.

On or about October 26, 2008, the defendant's cousin's eleven-year-old son and African American boyfriend discovered the burned cross while they were riding a "four-wheeler" all-terrain vehicle around the property. The cousin's African American boyfriend was very scared when he saw the burned cross. When they returned to the house, they told the defendant's cousin of the cross.

Later that day, the defendant spoke via telephone with the granddaughter who lived with his grandparents and he asked her if there had been a commotion at the grandparents' house. The defendant then called back, told her to go outside, and directed her to the location of the burned cross behind the grandparents' house. The granddaughter was very upset at seeing the burned cross, and she asked the defendant why he would do something like that. The defendant said that he and some friends had built the cross and burned it behind the grandparent's house. The defendant explained that he did not like African Americans, that he did not approve of his cousin's inter-racial relationship with an African American man, and that he thought the cross-burning would scare his cousin's African American boyfriend

-4-

away.

While the granddaughter spoke to the defendant via telephone, the defendant's cousin went over to the grandparents' house and told them about the burned cross her African American boyfriend and son had found.  When the granddaughter returned to the house, everyone discussed and viewed the burned cross.  The defendant's grandmother then telephoned the Claiborne Parish Sheriff's Office, which dispatched a deputy sheriff to the residence and, ultimately, referred this matter to the FBI.  When the defendant learned that the FBI was investigating the cross-burning, he removed and destroyed and/or concealed the burned cross so that it would not be available as evidence to the FBI.  While the parties were endeavoring to reach a pre-indictment resolution of this matter, the defendant and his attorney met with the attorneys for the United States and the assigned FBI agent for two proffers on August 25 and 26, 2009.  When the United States learned that the Defendant had rejected the pre-indictment plea offer, the United States presented the indictment in this case to a federal grand jury sitting in Shreveport, Louisiana, which voted a true bill on September 25, 2009.

## II.    DISCUSSION

The defendant moves for a bill of particulars on the grounds that he must be fully informed of the charges against him and have sufficient detail to prepare a defense and minimize surprise at trial.  A bill of particulars is proper only when necessary to enable the defendant to prepare his defense, avoid unfair surprise at trial, and preclude a second

prosecution for the same offense.  Moreover, to prevail on a motion for a bill of particulars, the defendant must demonstrate prejudice.  The defendant's motion should be denied because he already has more than the information to which he is entitled.  The indictment is constitutionally-sound; the defendant may not improperly use a bill of particulars as a discovery device; and the defendant has shown no prejudice.  The United States requests that the Court deny the defendant's motion in its entirety.

### A.    The Indictment Provides All of the Information the Defendant Needs

The decision to grant or deny a defendant's motion for a bill of particulars lies within the sound discretion of the Court.  United States v. Barrentine, 591 F.2d 1069, 1077 (5th Cir. 1979).  However, as the Court is well aware, the purpose of a bill of particulars is to supplement the allegations in the indictment only when necessary to: (1) enable the defendant to prepare his defense; (2) avoid unfair surprise at trial; and (3) preclude a second prosecution for the same offense.  Wong Tai v. United States, 273 U.S. 77, 80-81 (1927); United States v. Mackey, 551 F.2d 967, 970 (5th Cir.1977);  United States v. Bearden, 423 F.2d 805, 809 (5th Cir.1970).   A bill of particulars is unnecessary where, as here, the indictment sets forth the elements of the offense charged and provides sufficient information for a double jeopardy defense.  See Mackey, 551 F.2d at 970; United States v. St. Pe', Crim. A. No. 92-459, 1992 WL 345118, at *5 (E.D.La. Nov. 6, 1992).  As set forth in the United States' response in opposition to the defendant's motion to dismiss, the indictment in this case is properly pleaded and constitutionally sound.  Indeed, the indictment provides more

information than is required under the Sixth Amendment and Federal Rule of Criminal Procedure 7.  For example, in Count One of the indictment, which charges a violation of 18 U.S.C. § 241, the indictment sets out the plan and purpose and many overt acts of the charged conspiracy.  This information is provided in the indictment notwithstanding the fact that Section 241 does not require proof of an overt act.  United States v. Morado, 454 F.2d 167, 169 (5th Cir. 1972); United States v. Wilkins, 376 F.2d 552, 562 (5th Cir. 1967); see also Whitfield v. United States, 543 U.S. 209, 214 (2005); United States v. Shabani, 513 U.S. 10, 13-14 (1994).  The indictment in this case is well-pleaded and constitutionally-sound. Therefore, there is no basis for a bill of particulars in this case.

**B.** **A Bill of Particulars Cannot Be Used to Supplement the Already-Extensive Discovery Provided to the Defendant**

The defendant's request for a bill of particulars is merely a discovery tool "to obtain detailed disclosure of the government's evidence prior to trial," United States v. Kilrain, 566 F.2d 979, 985 (5th Cir.1978), and it therefore should be denied.  The purpose of a bill of particulars is not to obtain discovery, evidentiary details of the United States' case, or information regarding the United States' legal theories.  See Wong Tai, 273 U.S. at 82; Kilrain, 566 F.2d at 985; Bearden, 423 F.2d at 809; United States v. Drafbovskiy, No. 2:09 cr 0146-001, 2009 WL 2969902, at *1 (W.D.La. Sept. 10, 2009) (Minaldi, J.); United States v. Mathieu, No. CRIM. A. 94-96, 1994 WL 660465, at *1 (E.D.La. Oct. 31, 1994).  Nor may a bill of particulars be used to obtain materials typically filed pre-trial, such as a witness list. United States v. Fischel, 686 F.2d 1082, 1090-91 (5th Cir. 1982); United States v. Pena, 542

F.2d 292, 294 (5th Cir. 1976).

The defendant has received far more discovery than is required under Federal Rule of Criminal Procedure 16.  In addition to providing the defendant a disk with copies of discoverable materials found in the United States' case file, the United States has provided, and will continue to provide, copies of discoverable evidence to the defense.  While the defendant is entitled to discoverable evidence, he is not entitled to it in any particular form. Indeed, the defendant need only review the documents already produced to find that which he seeks.  The United States is not required to supplement this extensive discovery with a bill of particulars.

## C.    The Defendant Has Not Demonstrated the Requisite Prejudice

Finally, a defendant must show that he would be prejudiced without the bill of particulars.  United States v. McKinney, 53 F.3d 664, 675 (5th Cir. 1995); United States v. Lindell, 881 F.2d 1313, 1326 (5th Cir. 1989).  The defendant makes a blanket, one-line claim that he will suffer prejudice without the requested information.  Such an assertion is insufficient to form a proper request for a bill of particulars.  The defendant has not demonstrated the requisite prejudice to warrant a bill of particulars.

In sum, the indictment in this case and the extensive discovery afforded to the defendant is sufficient to fully apprise the defendant of the nature of the charges against him; to allow him to prepare his defense; to minimize surprise at trial; and to plead double jeopardy if later prosecuted for the same offenses.  Accordingly, there is no need for a bill

of particulars in this case and the defendant's motion should be denied.

**D.      The Defendant's Requested Bill of Particulars**

In his motion for a bill of particulars, the defendant seeks the following categories of information.  In addition to the United States' general opposition to the defendant's motion, the United States provides the following information:

1.      The Defendant's First Request

The defendant first seeks the identity of "[a]ll unnamed and unindicted co-conspirators known to the grand jury or the United States Attorney and all various other persons known to the grand jury or the United States Attorney who are referred to in the indictment and/or who are alleged to have participated in or been related to any of the activities described in the indictment."  Def. Mot. ¶ 1.  More specifically, in his supporting memorandum, the defendant "seeks information concerning individuals described in the indictment as "at least one other person."  Def. Mem. at 1.

Consistent with the United States Department of Justice policy, the United States did not identify the defendant's unindicted co-conspirator(s) in the indictment.  However, the United States recognizes its obligation to inform the defendant of the identity of unindicted co-conspirator(s) that the United States plans to call as witnesses at trial.  See Barrentine, 591 F.2d at 1077.  At this juncture, the United States does not intend to call any of the defendant's unindicted co-conspirator(s) as witnesses at trial.  Should that change, the United States will inform the defendant of that fact.  It should also be noted that the defendant met

with the United States during two pre-indictment proffers, and that, during these conversations, the defendant discussed at length the identity of his co-conspirators.  It is clear from these proffers (and from the extensive discovery provided to the defendant), that the defendant is well-aware of the identity of his co-conspirator(s).

The United States likewise omitted the names of the other individuals referenced in the indictment in an effort to protect their privacy.  Their identity should be readily available from the extensive discovery provided to the defendant and his own knowledge of the facts surrounding the case.

### 2.     The Defendant's Second Request

The defendant next seeks "[t]he name, address and role in the charged offenses of each government informant and witness."  Def. Mot. ¶ 2.

The United States does not have an informant in this case.  Furthermore, neither Rule 7 nor 16 of the Federal Rules of Criminal Procedure mandates the disclosure of the names and addresses of the United States' witnesses.  The defendant simply is not entitled to the United States' witness list in advance of trial.  However, as noted, the defendant has received extensive discovery in this case, from which he may glean the information he seeks.

### 3.     The Defendant's Third Request

The defendant next seeks the "[t]he particular overt acts committed in furtherance of any conspiracy charged in the indictment."  Def. Mot. ¶ 3.

The United States declines to list each and every overt act taken by the defendant in

furtherance of the conspiracy charged in Count One of the indictment.  However, the indictment already lists, in significant detail, most, if not all, of the overt acts known to the United States, even though, as noted, evidence of an overt act is not required under 18 U.S.C. § 241.  If other overt acts are proven at trial, such evidence is proper without notice.

### 4.   The Defendant's Fourth Request

The defendant also seeks "[t]he location(s) where any agreement to enter into a form [sic] the conspiracy occurred."  Def. Mot. ¶ 4.

To the extent this information is discoverable, it has already been provided to the defendant through the United States' extensive discovery.

### 5.   The Defendant's Fifth Request

Finally, the defendant seeks "[a]ll overt conversations, meetings or discussions by and between any co-conspirator or other unnamed person, including the location and date of each meeting, the content of any conversation and the identities of any person present at the meeting, regarding the acts as charged in the indictment."  Def. Mot. ¶ 4.

With this incredibly broad request, the defendant essentially seeks a catalogue of every conversation, discussion, and meeting involving the defendant and every other individual referenced in the indictment.  This request is far beyond the scope of what is required under the rules of discovery.  To the extent that this information is discoverable, it has already been provided to the defendant through the United States' extensive discovery. The United States is not required to provide more.  Moreover, like many of the other requests, based upon its

pre-indictment proffers with the defendant, the United States believes that the defendant has all of this information.

## III.    CONCLUSION

Taken together, the indictment, the extensive discovery already made available to the defendant pre-indictment and pursuant to Federal Rule of Criminal Procedure 16, and the materials disclosed pursuant to the United States' obligations set forth in <u>Brady v. Maryland</u>, 373 U.S. 83 (1963); <u>Giglio v. United States</u>, 405 U.S. 150 (1972), are more than sufficient to apprise the defendant of the charges against him and to enable him to adequately prepare for trial.  Thus, the defendant's motion for a bill of particulars should be denied.

Respectfully submitted,

DONALD W. WASHINGTON
United States Attorney
Western District of Louisiana

By:     /s/ Mary J. Mudrick
        MARY J. MUDRICK, LA Bar No. 01992
        Assistant United States Attorney
        300 Fannin Street, Suite 3201
        Shreveport, Louisiana  71101
        (318) 676-3600

        THOMAS E. PEREZ
        Assistant Attorney General
        United States Department of Justice
        Civil Rights Division

By:     /s/ Erin Aslan
        ERIN ASLAN, DC Bar No. 976504
        Trial Attorney, Criminal Section
        950 Pennsylvania Avenue, NW - PHB 5810
        Washington, District of Columbia  20530
        (202) 514-3204

-12-

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO.: 09-00250-01 |
| VERSUS | * | JUDGE DONALD E. WALTER |
| DANIEL EARL DANFORTH | * | MAGISTRATE JUDGE HORNSBY |

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 9th day of November, 2009, a copy of the foregoing

"United States' Response in Opposition to Defendant's Motion for a Bill of Particulars" was

filed electronically with the Clerk of the Court using the CM/ECF system.  Notice of this

filing was sent by operation of the CM/ECF system to:

> Joseph S. Woodley
> Pettiette, Armand, Dunkelman,
> Woodley, Byrd, & Cromwell, LLP
> 400 Texas Street, Suite 400
> Post Office Box 1786
> Shreveport, Louisiana 71166-1786

> /s/ Mary J. Mudrick
> MARY J. MUDRICK, LA Bar No. 01992
> Assistant United States Attorney
> 300 Fannin Street, Suite 3201
> Shreveport, Louisiana  71101
> (318) 676-3600

> /s/ Erin Aslan
> ERIN ASLAN, DC Bar No. 976504
> Trial Attorney, Criminal Section
> 950 Pennsylvania Avenue, NW - PHB 5810
> Washington, District of Columbia  20530
> (202) 514-3204