UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO.: 09-00250-01 |
| VERSUS | * | JUDGE WALTER |
| DANIEL EARL DANFORTH | * | MAGISTRATE JUDGE HORNSBY |

**UNITED STATES' NOTICE OF INTENT
TO INTRODUCE OTHER ACTS EVIDENCE**

NOW INTO COURT, through the undersigned Assistant United States Attorney and Trial Attorney, Criminal Section, Civil Rights Division, Department of Justice (collectively, "the United States"), comes the United States of America and respectfully submits this notice of intent to introduce other acts evidence pursuant to Rule 404(b) of the Federal Rules of Evidence.[1] The United States moves this Court for the admission of this other acts evidence in its case-in-chief against the defendant, Daniel Earl Danforth, to prove his motive, intent, and plan in the commission of the charged offenses. The United States may supplement its notice as it reviews evidence in preparation for trial. Trial is set for January 19, 2010.

I.  **BACKGROUND**

   A.  **Summary of the Charges**

On September 25, 2009, a federal grand jury sitting in Shreveport, Louisiana, returned a four-count indictment against the defendant, charging him with one count of conspiracy against rights, in violation of 18 U.S.C. § 241 (Count One); one count of criminal interference with the right

---

[1] Contemporaneously with the filing of this notice, the United States is also filing motions in limine to admit the defendant's statements, to exclude improper character evidence, and to exclude improper impeachment evidence.

to fair housing, in violation of 42 U.S.C. § 3631 and 18 U.S.C. § 2 (Count Two); one count of use of fire in the commission of a federal felony, in violation of 18 U.S.C. §§ 844(h) and 2 (Count Three); and one count of destruction or concealment of a tangible object, in violation of 18 U.S.C. § 1519 (Count Four). Count Three of the indictment is premised upon the felonies charged in Counts One and Two.

These first three counts arise out of the cross-burning that the defendant,[2] while aided and abetted by, and conspiring with, others, carried out near the homes of his paternal grandparents and his cousin, who was living with her African American boyfriend[3] and eleven-year-old son.[4] Count Four arises out of the defendant's subsequent obstructive conduct. The defendant and his co-conspirators burned the cross because of race and because the victims were occupying dwellings.[5] Specifically, the defendant was angered by the fact that his cousin's boyfriend was living with her, the interracial nature of the relationship between his cousin and her boyfriend, and the Defendant's grandparents' perceived acquiescence to the relationship. When the defendant learned that the Federal Bureau of Investigation ("FBI") was investigating the cross-burning, he obstructed justice by destroying and/or concealing the burned cross so that it would be unavailable as evidence.

---

[2] The defendant was born on November 2, 1978, and is presently 31 years old.

[3] The defendant's cousin and her African American boyfriend were married on November 22, 2008. For the sake of clarity, he will be referred to herein as the cousin's boyfriend, as that was his status at the time these crimes were committed.

[4] The defendant's cousin's son is the child of another union.

[5] The defendant and all other individuals mentioned in this memorandum are white, except for the defendant's cousin's boyfriend, who, as noted, is African American.

**B.     Relevant Factual Background**

In October, 2008, the defendant's paternal grandparents lived with an adult granddaughter in a house on Danforth Road in Athens, Louisiana.  The defendant's cousin and her boyfriend and eleven-year-old son lived in the house immediately next door to the grandparents' home.

In or around the middle of October, 2008, the defendant and his father visited the defendant's paternal grandparents.  During this visit, the defendant and his father expressed displeasure with the fact that the cousin's boyfriend was living at the house next door.  In large part, as a result of the presence of the cousin's boyfriend, the defendant's father argued with the grandparents and abruptly ended his visit.  The defendant then decided to burn a cross at his grandparent's house because of the presence of his cousin's boyfriend and because the grandparents were allowing the boyfriend to live in the house next door.

Between on or about October 23 and 26, 2008, the defendant invited several individuals to help him build and burn a cross at his paternal grandparent's house.  The defendant told these individuals that his father had argued with the defendant's grandparents about the fact that the defendant's cousin was living with an African American man; that the defendant was mad at his grandparents for allowing his cousin to "mix races"; that the defendant did not think that his grandfather approved of the inter-racial nature of the relationship between the defendant's cousin and her boyfriend; that the defendant wanted to "do something" about the African American man living with his cousin; and that the defendant wanted to "run a 'nigger' off" from his grandparents' house.

The defendant and/or his co-conspirator(s) then built a cross out of two small pine trees, using wire and a large nail to hold the pine trees in the shape of a cross.  The defendant and/or his

co-conspirator(s) drove the cross to the woods behind the grandparents' house and carried the cross through the woods. When the defendant and/or his co-conspirator(s) walked out of the woods into a clearing behind the grandparents' house, the defendant and/or his co-conspirator(s) covered the cross with oil or another ignitable liquid and lit the cross on fire.

On or about October 26, 2008, the defendant's cousin's eleven-year-old son and boyfriend discovered the burned cross while they were riding a "four-wheeler" all-terrain vehicle around the property. The cousin's boyfriend was very scared when he saw the burned cross. When they returned to the house, they told the defendant's cousin of the cross.

Later that day, the defendant spoke via telephone with the granddaughter who lived with his grandparents and he asked her if there had been a commotion at the grandparents' house. The defendant then called back, told her to go outside, and directed her to the location of the burned cross behind the grandparents' house. The granddaughter was very upset at seeing the burned cross, and she asked the defendant why he would do something like that. The defendant said that he and some friends had built the cross and burned it behind the grandparent's house. The defendant explained that he did not like African Americans; that he did not approve of his cousin's inter-racial relationship with an African American man; and that he thought the cross-burning would scare his cousin's African American boyfriend away.

While the granddaughter spoke to the defendant via telephone, the defendant's cousin went over to the grandparents' house and told them about the burned cross her boyfriend and son had found. When the granddaughter returned to the house, everyone discussed and viewed the burned cross. The defendant's grandmother then telephoned the Claiborne Parish Sheriff's Office, which dispatched a deputy sheriff to the residence and, ultimately, referred this matter to the FBI. When

the defendant learned that the FBI was investigating the cross-burning, he removed and destroyed and/or concealed the burned cross so that it would not be available as evidence to the FBI.

While the parties were endeavoring to reach a pre-indictment resolution of this matter, the defendant and his attorney met with the attorneys for the United States and the FBI case agent for two proffers on August 25 and 26, 2009.  When the United States learned that the defendant had rejected the pre-indictment plea offer, the United States presented the indictment in this case to a federal grand jury sitting in Shreveport, Louisiana, which voted a true bill on September 25, 2009.

As noted above, the United States anticipates that the evidence will show, based upon the defendant's statements to witnesses before and after the cross-burning, that the defendant was motivated, at least in part, by race when he carried out the charged the cross-burning, while aided and abetted by, and conspiring with, others.[6]  Since the time of his arrest, the defendant has expressly disavowed a racial motivation for his actions in the recorded telephone conversations he has made while detained at the Bossier Sheriff Correctional Center.  Thus, the United States anticipates that the existence of a racial motivation for the defendant's conduct will be a central part of the defense and a contested issue at trial.

---

[6] What is more, the defendant himself acknowledged that he was motivated, at least in part, by race during his proffers with the United States.  Specifically, the defendant said that he orchestrated and participated in the cross-burning because there was a black man living next door to his grandparents; because his father and grandfather were upset by the presence of the cousin's boyfriend and the interracial nature of the relationship between the cousin and her boyfriend; and because the defendant believed that his grandfather did not want the cousin's boyfriend to live next door.  The United States recognizes that the terms of the proffer agreement limit its ability to use this evidence against the defendant.  However, should the defendant provide testimony at trial that differs materially from the statements made and information provided during the proffers, the United States may use the statements made and information provided during the proffer as impeachment or rebuttal evidence against the defendant.

## II. LEGAL ANALYSIS

### A. Other Acts Evidence to Be Admitted

The United States intends to introduce in its case-in-chief the following evidence not specifically charged in the indictment with respect to the defendant, all of which was uncovered during the course of the investigation of this case:

1. Evidence that the defendant does not like African American people, as expressed in his statements to various witnesses, many of whom are relatives who have known the defendant his entire life;

2. Evidence that the defendant does not approve of interracial relationships, particularly relationships between white and African American people, as expressed in his use of racial slurs (e.g., "nigger-lover") and statements (e.g., "What does a black man have that white man does not?") to various witnesses, many of whom are relatives who have known the defendant his entire life;

3. Evidence of the defendant's use of racial slurs (e.g., "nigger") throughout his life;

4. Evidence of the defendant's dissemination of racist jokes throughout his life (e.g., a black man would stick to the ceiling if it had velcro on it); and

5. Evidence that the defendant engaged in an act of racially-motivated violence on or about January 20, 2007, when he used his motor vehicle to run an African American couple's vehicle off the road.

All of the above-listed evidence demonstrates the defendant's animus towards African Americans and, therefore, is probative of his motive, intent, and plan in carrying out the cross-burning with others as charged in the indictment.

### B. Evidence of the Defendant's Racial Beliefs Is Properly Admitted Pursuant to Federal Rule of Evidence 404(b)

This evidence outlined above is properly admitted under Rule 404(b) of the Federal Rules of Evidence because it is probative of the defendant's motive, intent, and plan in carrying out the offenses charged in this case.

Rule 404(b) provides, in pertinent part, that:

> [e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. . . .

The Fifth Circuit has rule that Rule 404(b) is an inclusionary rule under which evidence is admissible except where it tends to prove only criminal disposition. See, e.g., United States v. Arthur Andersen, LLP, 374 F.3d 281, 288-89 (5th Cir. 2004), rev'd on other grounds, 544 U.S. 696 (2005); United States v. Ackal, 706 F.2d 523, 531 (5th Cir. 1983); United States v. Shaw, 701 F.2d 367, 386 (5th Cir. 1983).

Under Fifth Circuit law, the admissibility of other acts evidence is governed by a two-step test. "First, it must be determined that the extrinsic offense evidence is relevant to an issue other than the defendant's character. Second, the evidence must possess probative value that is not substantially outweighed by its undue prejudice and must meet the other requirements of rule 403." United States v. Beechum, 582 F.2d 898, 911 (5th Cir. 1978). As set forth in greater detail below, each element of this inquiry supports the admissibility of the United States' proffered other acts evidence as probative of the defendant's motive, intent, and plan.

1.   Other Acts Evidence of the Defendant's Racial Animus Is Highly Relevant to His Motive, Intent, and Plan in Carrying Out the Charged Offenses

The first step of this inquiry is essentially a question of relevancy, subject to the admissibility threshold for all evidence set forth in Federal Rule of Evidence 401. See id. In general, this threshold is fairly minimal, for "[e]vidence is relevant once it appears 'to alter the probabilities of a consequential fact.'" Id. at 913 (quoting Weinstein & Berger, Weinstein's Evidence P 401(06), at 401-18 (1976)). Moreover, "the government need only provide some evidence that the defendant committed the prior bad act." United States v. Crawley, 533 F.3d 349, 354 (5th Cir.), cert. denied, 129 S.Ct. 522 (2008) (emphasis in original) (quoting United States v. Gonzalez-Lira, 936 F.2d 184, 189-90 (5th Cir.1991)). Here, the proffered other acts evidence is highly relevant and probative of a material issue in this case.

The United States intends to introduce the above-described other acts evidence to prove that, in carrying out the offenses charged in Counts One and Two of the indictment, the defendant was motivated, at least in part, by race. To prove that the defendant committed the offenses charged in Count One of the indictment, conspiracy to deprive rights, in violation of 18 U.S.C. § 241, the United States must prove that the object of the conspiracy was to interfere with a federally-protected right. See 18 U.S.C. § 241; United States v. Price, 383 U.S. 787, 800 (1966). The underlying right in this case is the victims' right to occupy a dwelling free from injury, intimidation, or interference based on race, which is protected by the Fair Housing Act, 42 U.S.C. § 3601 et seq. The right to occupy a dwelling free from racially-based "interference" includes the right to associate with a person of another race. E.g. United States v. Hayward, 6 F.3d 1241, 1249 (7th Cir. 1993), overruled in part on other grounds by, United States v. Colvin, 353 F.3d 569 (7th Cir. 2003) (en banc); United

States v. Wood, 780 F.2d 955, 961 (11th Cir. 1986); United States v. Johns, 615 F.2d 672, 675 (5th Cir. 1980).

Similarly, to prove that the defendant committed the offense charged in Count Two of the indictment, the United States must prove that he acted because of race. See 42 U.S.C. § 3631; see also United States v. Magleby, 241 F.3d 1306, 1310 (10th Cir. 2001); Wood, 780 F.2d at 961-62. Neither Section 241 nor Section 3631 requires that a defendant be solely motivated by racial animus or a desire to interfere with a victim's housing rights. E.g., United States v. Craft, 484 F.3d 922, 926 (7th Cir. 2007); Johns, 615 F.2d at 675. Thus, to establish the conspiracy charged in Count One and the housing violation charged in Count Two, the United States must necessarily prove that the defendant's actions were motived, at least in part, by racial animus.

The burden of proving the defendant's racial motivation remains with the United States even if a defendant acknowledges his racist views. United States v. Franklin, 704 F.2d 1183, 1188 (10th Cir. 1983) ("Even though [the defendant] did not deny his racism, a racial motive was still an element of the crime that the Government had to prove."). However, as noted, the United States does not have to prove that racial animus was the defendant's sole motivation. So long as the United States proves that the defendant was motivated in part by discriminatory animus, the presence of other motives, such as personal dislike, anger, or revenge, will not make the conduct any less a violation of Section 241 or 245. See, e.g., Johns, 615 F.2d at 675 (rejecting a sufficiency of the evidence challenge to §§ 3631 and 245 convictions) ("The presence of other motives, given the existence of the defendants' motive to end interracial cohabitation, does not make their conduct any less a violation of 42 U.S.C. § 3631.").

In this case, the defendant has placed his intent at issue by pleading not guilty to the charged offenses. See United States v. McCall, 553 F.3d 821, 828 (5th Cir. 2008), cert. denied, 129 S.Ct. 2018 (2009) ("By pleading not guilty to the charges and requiring the government to prove the elements of its case, [the defendant] made evidence of his general intent relevant.") (citing United States v. Buchanan, 70 F.3d 818, 831 (5th Cir.1995) (same)); United States v. Booker, 334 F.3d 406, 411 (5th Cir. 2003) ("The mere entry of a not guilty plea in a conspiracy case raises the issue of intent sufficiently to justify the admissibility of extrinsic offense evidence.") (citing United States v. Broussard, 80 F.3d 1025, 1040 (5th Cir. 1996) (same)). Moreover, since his proffer with the United States, the defendant has disavowed any racial motivation for his actions. Thus, the United States anticipates that the defendant will defend against the charges by arguing that he acted because of reasons wholly unrelated to race. The other acts evidence will, therefore, bear directly upon a contested issue in this case.

Evidence that defendant has committed other acts motivated by racial animus or expressed a dislike for interracial relationships and people of other races is probative of his motive, intent, and plan in carrying out the cross-burning with others. Indeed, the Supreme Court has held that evidence of extrinsic acts, such as the other acts evidence proffered in this case, "may be critical to the establishment of the truth as to a disputed issue, especially when that issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from that conduct." Huddleston v. United States, 485 U.S. 681, 687 (1988). Fifth Circuit law reflects this very same principle. Indeed, the Beechum court held that extrinsic evidence is "highly relevant" to intent. 582 F.2d at 909. This is because "[w]here the issue addressed is the defendant's intent to commit the offense charged, the relevancy of the extrinsic offense derives from the defendant's

indulging himself in the same state of mind in the perpetration of both the extrinsic and charged offenses. The reasoning is that because the defendant had unlawful intent in the extrinsic offense, it is less likely that he had lawful intent in the present offense." Id. at 911.

More specifically, other courts have held that other acts evidence of racial animus is probative of a defendant's motive, intent, and plan in carrying out a racially-motivated hate crime. As the Tenth Circuit has explained, "[e]vidence of past racial animosity is relevant to establish" discriminatory motive and therefore "falls squarely within the motive and intent purposes delineated in 404(b)." United States v. Woodlee, 136 F.3d 1399, 1410 (10th Cir. 1998); see also Franklin, 704 F.2d at 1188-89 (approving of the admission of evidence of the defendant's assault upon an interracial couple in another state almost four years earlier). Indeed, courts have admitted precisely the type of other acts evidence outlined in this notice, including: (1) expressions of dislike of non-white people or a desire not to associate with non-white people, e.g., Woodlee, 136 F.3d at 1410; United States v. Dunnaway, 88 F.3d 617, 618-19 (8th Cir. 1996); (2) expressions of disapproval of interracial relationships, e.g., Dunnaway, 88 F.3d at 618-19; Franklin, 704 F.2d at 1187; (3) racist jokes and racial slurs, e.g., Magleby, 241 F.3d at 1308, 1313, 1319; Dunnaway, 88 F.3d at 618-19; and (4) prior acts of racially-motivated violence, Franklin, 704 F.2d at 1188-89; United States v. Three Juveniles, 886 F. Supp. 934, 945 (D. Mass. 1995).

The proffered other acts evidence in this case -- evidence that the defendant does not like African American people; that the defendant does not approve of interracial relationships, particularly relationships between white and African American people; that the defendant uses racial slurs; that the defendant disseminates racists jokes; and that the defendant has previously committed an act of racially-motivated violence -- is probative of the defendant's state of mind in committing

the acts charged in Counts One and Two of the indictment and is, therefore, probative of a material issue in this case and relevant to matters in dispute. Thus, the proffered other acts evidence far exceeds the minimal relevancy threshold for admissibility.

### 2. The Probative Value of the Other Acts Evidence Far Exceeds Its Potential for Prejudice

The second step of the inquiry requires to Court to assess whether the probative value of the other acts evidence is <u>substantially</u> outweighed by its potential for prejudice, which the Fifth Circuit has recognized to be a "difficult standard to overcome." See United States v. Moody, 564 F.3d 754, 764 (5th Cir.), cert. denied, 129 S.Ct. 2756, cert. denied sub nom., 130 S.Ct. 315 (2009). Indeed, "Rule 403 'would seem to require exclusion only in those instances where the trial judge believes that there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence.'" United States v. Cockrell, --- F.3d ---, No. 08-41008, 2009 WL 3682588, at *3 (5th Cir. Nov. 6, 2009) (quoting Beechum, 582 F.2d at 915 n.20). Relevant to this inquiry are the quantum of proof establishing the other acts, the similarity and proximity in time between the other acts and the charged offenses, and the use of a limiting instruction. See Cockrell, 2009 WL 3682588, at *3; Beechum, 582 F.2d at 914-15. Each of these considerations weigh in favor of admitting the proffered other acts evidence.

First, there is sufficient evidence to prove that the other acts occurred. Here, all of the proposed other acts evidence of racial animus will be established by the testimony of witnesses, many of whom have known the defendant for years. Indeed, many of these witnesses are the defendant's relatives. Their familiarity with the defendant and his racial beliefs, as expressed by the defendant to these witnesses, is significantly more than the "unsubstantiated innuendo" that the

Supreme Court was concerned about in Huddleston, 485 U.S. at 681. The United States will offer significantly more than some evidence that the other acts occurred. See Crawley, 533 F.3d at 354.

Second, the other acts are similar to the charged offenses. Here, the defendant is charged with burning a cross with others because he was angered by the fact that his cousin's boyfriend was living with her, the interracial nature of the relationship between his cousin and her boyfriend, and the Defendant's grandparents' perceived acquiescence to the relationship. Under these circumstances, the symbolism of a cross-burning is a clear expression of racial animus. For much of the past century, cross-burnings have served as both "a symbol of white supremacy and a tool for the intimidation and harassment of racial minorities . . . ." Capitol Square Review & Advisory Bd. v. Pinette, 515 U.S. 753, 770 (1995) (Thomas, J., concurring); see also Virginia v. Black, 538 U.S. 343, 363 (2003) (noting that cross-burning has a "long and pernicious history as a signal of impending violence"); United States v. Konopka, 409 F.3d 837, 839 (7th Cir. 2005) (noting that "burning of the cross is a method of racist intimidation"); Hayward, 6 F.3d at 1250 (recognizing that "a burning cross [may be interpreted] as a precursor to physical violence and abuse against African Americans" and that "the act of cross-burning promotes fear, intimidation and psychological injury"); United States v. Salyer, 893 F.2d 113, 117 (6th Cir. 1989) (noting the "historical connotations of violence associated with the act" of cross-burning). Expressions of dislike of African American people, expressions of disapproval of interracial relationships, use of racial slurs, dissemination of racists jokes, and the commission of an act of racially-motivated violence all similarly convey racial animus. The proposed other acts evidence is very similar to the acts charged in the indictment insofar as it reflects a consistent state of mind and motivation on the part of the defendant, which further reinforces the probative value of such evidence.

Third, the other acts are not too remote in time. Here, much of the other acts evidence relates to conduct that is on-going and continuous, such as the defendant's dislike of African American people and disapproval of interracial relationships. Many of the witnesses who will establish the other acts evidence are expected to testify that they have known the defendant for years because of their familial relationship with the defendant and that he has continuously used racial slurs and expressed certain racial beliefs. Insofar as the other acts evidence relate to specific events, such as the defendant's act of racially-motivated violence on January 20, 2007, these acts occurred within the last several years. None of these other acts are too remote in time to be admitted in this case. The Fifth Circuit has approved of spans of ten to eighteen years between the other acts and the charged offense. See United States v. Arnold, 467 F.3d 880, 885 (5th Cir. 2006) ("We have upheld the admission of Rule 404(b) evidence where the time period in between was as long as 15 and 18 years.") (citing cases); United States v. Hernandez-Guevara, 162 F.3d 863, 872-73 (5th Cir. 1998) (approving the admission of a conviction that was nearly 18 years old); United States v. Chavez, 119 F.3d 342, 346 (5th Cir. 1997) (finding no abuse of discretion in the admission of a 15-year-old conviction); Broussard, 80 F.3d at 1040 (finding no prejudice from admission of prior conviction that was more than 10 years before the charged offense). Thus, the proximity in time of the other acts evidence supports their probative value.

Lastly, the use of a limiting instructions will significantly ameliorate any potential for prejudice. E.g., United States v. Cooks, --- F.3d ---, No. 07-11151, 2009 WL 4022278, at *6 (5th Cir. Nov. 23, 2009) (finding that any prejudice from the extrinsic evidence was "greatly minimized" by the court's use of a detailed limiting instruction).

In sum, the probative value of the other acts evidence the United States seeks to admit in this case far outweighs any potential for prejudice. Indeed, the proffered other acts evidence is substantially less prejudicial than other Rule 404(b) evidence that other courts have previously found admissible under Rule 403. See, e.g., Allen, 341 F.3d at 885-86 ("group photographs including some of the defendants (e.g., in 'Heil Hitler' poses and standing before a large swastika that they later set on fire)"); McInnis, 976 F.2d at 1230 ("[a] sign reading 'All Niggers Will Be Executed,' [ ] dolls with nooses around their necks, and [a] machete in the sheath reading 'Nigger Sticker'"); United States v. Skillman, 922 F.2d 1370, 1372, 1374 (9th Cir. 1990), 922 F.2d at 1372, 1374 ("a paper target of a black man running away with puncture holes"). Thus, the proffered other acts evidence outlined in this notice is properly admitted under each element of the two-step Beechum test and it should be admitted at trial.

### III. CONCLUSION

For the reasons set forth above, the United States respectfully requests that the Court admit the other acts evidence identified in this notice.

Respectfully submitted this 10th day of December, 2009.

                        DONALD W. WASHINGTON
                        United States Attorney
                        Western District of Louisiana

By:    s/ Mary J. Mudrick
             _____
             MARY J. MUDRICK, LA Bar No. 01992
             Assistant United States Attorney
             300 Fannin Street, Suite 3201
             Shreveport, Louisiana  71101
             (318) 676-3600

             THOMAS E. PEREZ
             Assistant Attorney General
             United States Department of Justice
             Civil Rights Division

By:    s/ Erin Aslan
             _____
             ERIN ASLAN, DC Bar No. 976504
             Trial Attorney, Criminal Section
             950 Pennsylvania Avenue, NW - PHB 5810
             Washington, District of Columbia  20530
             (202) 514-3204

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

SHREVEPORT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CRIMINAL NO. 5:09-CR-250 |
| VERSUS | * | JUDGE HICKS |
| DANIEL EARL DANFORTH | * | MAGISTRATE JUDGE HORNSBY |

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 10th day of December, 2009, a copy of the foregoing "United States' Notice of Intent to Introduce Other Acts Evidence" was filed electronically with the Clerk of the Court using the CM/ECF system.  Notice of this filing was sent by operation of the CM/ECF system to:

    Joseph S. Woodley
    Pettiette, Armand, Dunkelman,
    Woodley, Byrd, & Cromwell, LLP
    400 Texas Street, Suite 400
    Post Office Box 1786
    Shreveport, Louisiana 71166-1786

s/ Mary J. Mudrick
_____
MARY J. MUDRICK, LA Bar No. 01992
Assistant United States Attorney
300 Fannin Street, Suite 3201
Shreveport, Louisiana  71101
(318) 676-3600

s/ Erin Aslan
_____
ERIN ASLAN, DC Bar No. 976504
Trial Attorney, Criminal Section
950 Pennsylvania Avenue, NW - PHB 5810
Washington, District of Columbia  20530
(202) 514-3204